UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DIAMOND LAKE CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff,

v.                                        Case No. 2:19-cv-547-FtM-38NPM

EMPIRE INDEMNITY INSURANCE
COMPANY

      Defendant.

**ORDER**

Before the Court is Plaintiff's Motion to Compel Appraisal (Doc. 46). Defendant Empire Indemnity Insurance Company ("Empire") filed a Response (Doc. 50), and with leave of Court, Plaintiff Diamond Lake Condominium Association, Inc. ("Diamond Lake") filed a Reply (Doc. 56). For the reasons discussed below, the Court grants the motion.

**I.    Background**

This action involves an insurance dispute concerning the extent to which Hurricane Irma damaged an 81-unit condominium development known as Diamond Lake. (Docs. 1-5, 29). Pursuant to the Policy attached to the pleadings (Doc. 29, pp. 8-91), Empire insured the fifteen buildings that comprise Diamond Lake when Hurricane Irma struck the Property on September 10, 2017. (Doc. 29, ¶¶ 5-6). Diamond Lake promptly reported the loss to Empire and made a claim under the policy. (*Id.* at ¶ 8). Empire acknowledged coverage for the loss, evaluated the replacement cost value of the damages at $555,966.94, and, between the Fall of 2017 and the end of 2018, made payments totaling

$283,026.59 (after application of the policy deductible and depreciation). Disagreeing with Empire's valuation of the loss, Diamond Lake invoked the Policy's appraisal provision and timely submitted a Proof of Loss with supporting documentation on December 6, 2018 for $8,348,814.97. With repeated demands for an appraisal and in response to Empire's requests for corrections to be made, Diamond Lake submitted a revised Proof of Loss on February 9, 2019 for $8,312,174.31, and another revised Proof of Loss on April 15, 2019 for $8,256,923.67. (Doc. 29, ¶ 14; Doc. 31, ¶ 14; Doc. 46, pp. 2-3). In response, Empire advised Diamond Lake on April 22, 2019: "we do not agree with the amounts claimed and we continue our investigation." (Doc. 50-2, p. 1). Empire then completed its site inspections in May 2019. (Doc. 46-7, p. 5).

Based on Empire's alleged failure to "extend full policy benefits due" and breach of the Policy's appraisal provision, Diamond Lake initiated this breach-of-contract suit in state court on June 24, 2019, and Empire timely removed the action to this Court on August 5, 2019. (Doc. 1). About the same time, and indicating that its investigation was complete, Empire made a final payment of $122,249.33 based on a loss valuation of $555,966.94. (Doc. 46-2, p.2; Doc. 46-7, p. 5). In correspondence dated August 16, 2019, Diamond Lake asked Empire to immediately advise if any requests for information were left unfulfilled. (Doc. 46-3). Empire has never responded to say that anything more was needed. (Doc. 46, p.5; Doc. 56, p. 5).

Nonetheless, in an Amended Answer filed four months later, Empire asserted that the Policy's appraisal process remained premature because it had yet to complete its investigation. (Doc. 31, pp. 3-6). As Diamond Lake recounts: "The parties continued to communicate with regard to appraisal until February 7, 2020, when Empire finally,

unequivocally advised that it was not interested in appraisal of this claim." (Doc. 56, p. 2). And in what appears to be a game of Catch-22, Empire continues to resist Diamond Lake's contractual right to appraisal by arguing that it is both premature and waived. (Doc. 50).

## II.    Discussion

Absent an agreed-upon resolution, the Policy provides that an amount-of-loss question will be resolved not by a judge or jury but by an appraisal panel instead, and—if the parties end up in litigation concerning the benefits of the contract—it contemplates judicial facilitation of the appraisal process if it is not entirely self-executing by the parties. In relevant part, the Policy states:

> If we and you: . . .
>
> Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
> Each party will:
>
> 1.  Pay its chosen appraiser; and
>
> 2.  Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

  (Doc. 50-1, p. 44).

When an insurance policy contains an appraisal provision such as this one, "the right to appraisal is not permissive but is instead mandatory, so once a demand for

appraisal is made, 'neither party has the right to deny that demand.'" *McGowan v. First Acceptance Ins. Co., Inc.*, 411 F. Supp. 3d 1293, 1296 (M.D. Fla. 2019) (quoting *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. Dist. Ct. App. 1994)). Furthermore, "when [an] insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal." *Id.* at 1297 (quoting *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. Dist. Ct. App. 2014)). "Thus, where, as here, 'coverage [is] admitted and the only remaining dispute is the amount of the loss ... appraisal is appropriate.'" *Id.* (quoting *Gonzalez v. Am. Sec. Ins. Co.*, 2015 WL 12852303, at \*\*3-4 (M.D. Fla. Nov. 10, 2015). Indeed, given the "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means ... for which the parties have themselves contracted," resort to the appraisal process is strongly preferred. *Id.* at 1296 (quoting *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. Dist. Ct. App. 1995)).

With both the text of the appraisal provision and these standards favoring its enforcement firmly in mind, the Court addresses Empire's attempt to deny the demand for appraisal on the grounds that Diamond Lake's right to do so is unripe and waived.

### A. Ripeness

Empire argues that Diamond Lake's right to invoke the Policy's appraisal provision is not ripe—or did not become ripe prior to filing suit and is therefore forfeit—because certain terms in the Policy commonly referred to as "post-loss conditions" are conditions precedent to invoking appraisal and Diamond Lake has yet to, or did not timely, substantially comply with them. (Doc. 50, pp. 8-11).

Under the Policy, Diamond Lake has certain post-loss duties including:

>      (5)   At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
>
>      (7)   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
>
>      (8)   Cooperate with us in the investigation or settlement of the claim.

(Doc. 50-1 at 37). While appraisal provisions like the one at issue here do not expressly condition either party's unilateral right to invoke the appraisal process on any form of compliance with the Policy's post-loss duties (with which only the insured must comply), the parties agree that Florida's courts, at least in some circumstances (that may not exist here), have constructively conditioned an insured's right to invoke appraisal on substantial compliance with the Policy's post-loss duties. And assuming the post-loss duties are constructive conditions precedent here, Empire advances a two-pronged argument: (1) Diamond Lake has yet to substantially comply because it has not substantiated an opinion purportedly held by Diamond Lake's public adjuster; and (2) Diamond Lake's compliance was untimely because it did not substantially comply before filing suit.

The only information Empire claims Diamond Lake has not produced is information supposedly requested in an April 22, 2019 letter. Specifically, information or documentation to substantiate Diamond Lake's public adjustor George Keys' statement regarding the replacement of all the roofs. (Doc. 50 at 10-11). The Court reviewed the April 22, 2019 letter and finds no such request for information concerning Mr. Keys' statement. (*See* Doc. 50-2 at 1-3). However, in a March 4, 2019 letter, Empire requested: "On November 17, 2017, the minutes reflect that Keys Claims attended the board meeting and advised Diamond Lake that if one roof within a condominium association community

is damaged then all roofs must be replaced. Please provide the basis for this commentary." (Doc. 56-1 at 4). Tellingly, Empire does not point to a post-loss duty requiring the production of this information, and the Court does not find any. The Policy requires Diamond Lake to provide inventories, a sworn proof of loss, and to cooperate with Empire's investigation (such as accommodating site inspections), but does not require Diamond Lake to provide a basis for commentary by a public adjuster found in the minutes of a board meeting. Thus, Diamond Lake has fulfilled its post-loss obligations.

As for whether Diamond Lake's compliance was untimely, Empire points to a July 6, 2019 letter—sent after the lawsuit was filed—in which Empire asserted that it needed certain outstanding documents for its investigation. (Doc. 50 at 10; Doc. 46-6 at 3-4). Specifically, the July 6 letter claims Empire previously requested a copy of the bylaws and documentation related to a Herron Roofing report dated August 4, 2016, and it requested invoices related to window and door repairs for Units 208 and 504.[1] (Doc. 50 at 10-11; Doc. 46-6 at 3-4). But it appears uncontested that the "bylaws were provided before suit was filed" (Doc. 56, p.4), and Diamond Lake had already complied, prior to filing suit, with the request for documents related to the Herron Roofing report by providing a roof repair summary for 2010-2018 from the property manager. (Doc. 46-5, p.1). So, Empire's argument that Diamond Lake's compliance was untimely because it did not substantially comply before filing suit, is based on Diamond Lake "provid[ing] the requested documents related to Units 208 and 504" (Doc. 50 at 11) <u>*in response to a request that was made after the lawsuit was filed*</u>.

---

[1] Notably, Empire requested the invoices related to window and door repairs for Units 208 and 504 "regardless of whether or not Diamond Lake wishes to include them in the claim." (Doc. 46-6 at 3).

Besides, even if the document requests had been made prior to the initiation of the lawsuit, an insured may remedy any post-loss and pre-filing obligations for appraisal after filing suit. As the court reasoned in *Scottsdale Insurance Company v. University at 107th Avenue, Inc.*, 827 So. 2d 1016 (Fla. 3d DCA 2002), "[T]he nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured."  (quoting *United States Fid. & Guar. Co. v. Romay*, 744 So.2d 467, 471 n. 4 (Fla. 3d DCA 1999)). And so if an insured provides whatever the insurer might have wanted "post-loss and pre-suit" during the course of the suit, such as through discovery, then a trial court commits no error when it orders the insurer to "submit to an appraisal." *Id.* at 1016-1017.

In the instant action, Diamond Lake substantially complied with the post-loss provisions in the Policy before filing suit. Even if it did not, it complied within two months of filing suit. Since August 2019, Empire has not represented it requested any further documentation or needs any additional information to complete its investigation and adjust the claim. And it is clear the parties have a disagreement as to the amount of loss that is ripe for appraisal. (Doc. 29 at ¶¶ 10, 11).

### B.  Waiver

Empire argues that Diamond Lake's delay in filing the motion to compel appraisal evinces a waiver of its right to appraisal. "A party can waive its right to appraisal by actively participating in a lawsuit or engaging in conduct inconsistent with the right to appraisal." *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.,* No. 2:19-CV-81-FTM-38NPM, 2019 WL 3852731, *3 (M.D. Fla. Aug. 16, 2019), *reconsideration denied*,

No. 2:19-CV-81-FTM-38NPM, 2019 WL 4861196 (M.D. Fla. Oct. 2, 2019) (citations omitted). But "the question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether the [plaintiffs] acted inconsistently with their appraisal rights." *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 493 (Fla. 5th DCA 2014).

Diamond Lake invoked its right to appraisal on multiple occasions before filing suit and it has consistently pursued appraisal ever since. (Doc. 56 at 6-7). In fact, as early as December 6, 2018, Diamond Lake demanded appraisal in its initial Proof of Loss, named an appraiser, and requested Empire to name an appraiser—all prior to the lawsuit being filed. (Doc. 46 at 4). In an April 22, 2019 letter, Empire acknowledged Diamond Lake invoked its right to appraisal, but found Diamond Lake's request inappropriate as premature because Empire was continuing to investigate the claim. (Doc. 46-4 at 4). And in the same letter, Empire objected to Diamond Lake's appraiser as not being impartial. (*Id.*). Diamond Lake then voluntarily named a different appraiser. (Doc. 46 at 15).

Diamond Lake claims that through the entire period both before suit and after, the parties were actively negotiating regarding submitting the claim to appraisal. (Doc. 56 at 6). Diamond Lake sued, in part, to compel appraisal, and during the Preliminary Pretrial Conference on October 10, 2019, Diamond Lake's counsel represented that Diamond Lake intended to file a motion to compel appraisal. (Docs. 19, 20). Furthermore, when Diamond Lake served its February 5, 2020 discovery requests to support its motion for Rule 56(b) deferment directed to Empire's early-filed motion for partial summary judgment, it included an <u>*unopposed*</u> reservation of it right to submit the claim for appraisal. (Doc. 46 at 16; Doc. 50-3 at 1). And Diamond Lake explains that not until February 7,

2020—just nineteen days before the filing of the motion to compel appraisal—did Empire finally and unequivocally advise that it did not agree to appraisal.

In sum, Diamond Lake invoked its right to appraisal before suit, included a request for appraisal in its pleadings, continued to negotiate for appraisal throughout this period, represented in open court that it intended to move for appraisal, and reserved its right to appraisal in its discovery requests served in response to an early summary judgment motion. Diamond Lake filed its motion to compel appraisal shortly after learning that Empire would not agree to appraisal, and it named a different appraiser to resolve Empire's impartiality objection. Keeping in mind that motions to compel appraisal should be granted when a party invokes a contractual right to appraisal, *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2, and based on Diamond Lake's conduct as a whole, the Court finds that Diamond Lake has not waived its right to appraisal.

### III. Conclusion

For the above reasons, the Court finds that Diamond Lake's invocation of its contractual right to appraisal is neither waived nor untimely.

Accordingly, it is hereby **ORDERED**:

(1) The Motion to Compel Appraisal (Doc. 46) is **GRANTED** and the Request for Oral Argument is **DENIED**.

(2) By October 21, 2020, the parties will file a either a joint notice of agreed umpire or a joint motion for the Court to appoint an umpire. If the parties move the Court to appoint an umpire, the motion will be set for an in-person hearing during which the parties' respective appraisers will explain their objections to each other's proposed umpires.

(3) On January 4, 2021, and on the first business day of every other month thereafter, the parties will file a status report concerning the appraisal.

**DONE** and **ORDERED** in Fort Myers, Florida on September 30, 2020.

*Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE